## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KAREN McCURRY,** | : | |
| **Plaintiff** | | |
| v. | : | **CIVIL ACTION NO. 1:CV-07-1235** |
| | | |
| **MICHAEL J. ASTRUE,** | : | **(CALDWELL, D.J.)** |
| **Commissioner of** | | **(MANNION, M.J.)** |
| **Social Security** | : | |
| **Defendant** | | |

## REPORT AND RECOMMENDATION

The record in this action has been reviewed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to determine whether there is substantial evidence to support the Commissioner's decision denying the plaintiff's claim for Supplemental Security Income, ("SSI"), under Title XVI of the Social Security Act, ("Act").  42 U.S.C. §§ 1381-1383f.


## I.    PROCEDURAL HISTORY.

The plaintiff protectively filed an application for SSI on March 11, 2004, alleging disability since December 1, 1985 due to arthritis, back impairments, panic attacks, anxiety attacks and numbness in her hand.  (TR. 53, 185-86, 188, 190, 195).  The state agency denied her claim initially.  (TR. 30-33).  The plaintiff filed a timely request for a hearing, (TR. 34), and a hearing was held before an Administrative Law Judge, ("ALJ"), on August 3, 2006.  (TR. 180-208).  At the hearing, the plaintiff, accompanied by a non-attorney representative, and a vocational expert, ("VE"), testified.  (TR. 182-208).  The plaintiff was denied benefits pursuant to the ALJ's decision of September 19, 2006.  (TR. 13-21).

The plaintiff requested review of the ALJ's decision.  (TR. 10-11).  The Appeals Council denied her request on May 11, 2007, thereby making the

ALJ's decision the final decision of the Commissioner.  (TR. 4-7).  42 U.S.C. § 405(g).

In compliance with the Procedural Order issued in this matter, the parties have filed briefs in support of their respective positions.  (Docs. 9 and 10).

## II.    STANDARD OF REVIEW.

When reviewing the denial of disability benefits, we must determine whether the denial is supported by substantial evidence.  *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988); *Mason v. Shalala*, 994 F.2d 1058 (3d Cir. 1993).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988); *Hartranft v. Apfel*, 181 F.3d 358, 360. (3d Cir. 1999).  It is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 432(d)(1)(A).  Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  For purposes of the preceding sentence (with

2

respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

## III.    DISABILITY EVALUATION PROCESS.

A five-step evaluation process is used to determine if a person is eligible for disability benefits. *See* 20 C.F.R. § 404.1520 (2004). *See also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). If the Commissioner finds that a plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further. *See* 20 C.F.R. § 404.1520.

The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. *See* 20 C.F.R. § 404.1520.

In the instant matter, the ALJ proceeded through each step of the sequential evaluation process and concluded that the plaintiff was not disabled within the meaning of the Act. (TR. 16-21). At step one, the ALJ found that the plaintiff has not engaged in substantial gainful work activity since her alleged disability onset date, December 1, 1985. (TR. 18). At step two, the ALJ concluded that the plaintiff's impairments of arthritis and low back disorder were "severe" within the meaning of the Regulations. (TR. 18). The ALJ also determined that the plaintiff's depression and anxiety were "non-severe." (TR. 18). At step three, the ALJ found that the plaintiff's severe

3

impairments were not severe enough, either singly or in combination, to meet or medically equal the criteria for establishing disability under the listed impairments as set forth in Appendix 1, Subpart P, Regulations No. 4.  (TR. 18).

At step four, the ALJ found that the plaintiff has no past relevant work. (TR. 20). The ALJ found at step five that the plaintiff has the residual functional capacity, ("RFC"), to perform work at the light duty exertional level. (TR. 19).  The ALJ determined that there are a significant number of jobs in the national economy that the plaintiff can perform.  (TR. 20-21).  Thus, the ALJ concluded that the plaintiff had not been under a disability, as defined in the Act, since March 11, 2004, the date she filed the application.  (TR. 21). *See* 20 C.F.R. § 416.920(g).

## IV.    BACKGROUND.

### A.  Factual Background.

The plaintiff was born on June 2, 1965 and was forty-one (41) years old at the time of the ALJ's decision. (TR. 184). Thus, she is considered a "younger person" under the Regulations. 20 C.F.R. §§404.1563(c), 416.963(c). The plaintiff has a tenth grade education and last worked training as a certified nurse's aide.  (TR. 184-85).  The plaintiff also briefly worked in a nursing home and as a cook.  (TR. 185).

At the time of the ALJ hearing, the plaintiff testified that she was able to stand for approximately ten minutes, sit for thirty minutes and occasionally lift ten pounds. (TR. 191-92). The plaintiff stated that she has memory problems and a short attention span.  (TR. 192).  She does not have any problems dealing with the general public, co-workers or family.  (TR. 193).  The plaintiff testified that she had no side effects from her medications.  (TR. 195).  She used her pain medication sparingly due to a past addiction to pain pills.  (TR.

197).   During the day, the plaintiff does housework, cooks, cleans and watches television.  (TR. 193).

Vocational expert, Kristan Sagliocco, testified based on the *Dictionary of Occupational Titles*. (TR. 207). The VE stated that the plaintiff does not have any prior relevant work. (TR. 206). The ALJ asked the VE to hypothetically consider an individual with the plaintiff's same age, education and vocational background with the ability to stand for fifteen minutes, sit for thirty minutes, with a sit/stand option, who is unable to work an eight-hour day due to pain and difficulty moving, with the ability to lift no more than ten pounds, with marked difficulties in understanding and memory and marked difficulties in concentration and persistence. (TR. 206). The VE stated that such an individual would not be able to perform any work in the regional or national economy. (TR. 206-07).

### B.  Medical Background.

In July 1989 the plaintiff was awarded SSI benefits, however they were terminated in 2001 because she attempted to return to work.  (TR. 16).

The plaintiff treated with Cherilyn A. White, M.D., from 2000 to 2003. (TR. 97-108).  The plaintiff reported chronic low back pain in October 2000. (TR. 106).  In August 2002, the plaintiff again reported back pain to Dr. White. (TR. 100-01).  Dr. White noted that the plaintiff had x-rays in the past which revealed arthritic changes of the peripheral column. (TR. 100). Upon examination, it was noted that there was some levoscoliosis in her thoracic spine but the spine was not tender to palpation.  (TR. 100).

On May 12, 2003, Dr. White completed a Pennsylvania Department of Public Welfare Employability Assessment Form and found that the plaintiff was permanently disabled.  (TR. 148). Dr. White diagnosed chronic low back pain and based her assessment upon physical examination, review of the

medical records, the clinical history and appropriate tests and diagnostic procedures.  (TR. 148).

On November 7, 2003, Dr. White noted that the plaintiff had been doing well, she had no complaints about her medicines or medical problems and a review of her systems was negative.  (TR. 97).

In October 2004, the plaintiff treated with Sheila Robbins, C.R.N.P., and complained of anxiety.  (TR. 146).  In September 2005, Ms. Robbins noted that the plaintiff admitted she had a history of never following through with appointments with physicians or specialists.  (TR. 134).  The plaintiff did not treat with Ms. Robbins again until March 2006 when she requested medication refills.  (TR. 152-53).

The plaintiff underwent an MRI of the lumbar spine on July 19, 2006 which revealed mild abnormalities.  (TR. 154).

In November 2006, the plaintiff was evaluated at Northern Tier Counseling Mental Health Center and was treated by Dr. Lavin.  (TR. 176-79). The plaintiff reported anxiety, depression, panic attacks and difficulty catching her breath.  (TR. 176).  Upon mental status examination, the plaintiff's appearance was neat, her attention was good, she had appropriate affect, normal mood, intact thought process, no hallucinations or delusions, judgment/insight were impaired, she was oriented to all spheres, her speech was normal, she had average intelligence and impulse control.  (TR. 176). The plaintiff was diagnosed with anxiety disorder, NOS, depressive disorder, NOS, post-traumatic stress disorder and a Global Assessment of Functioning (GAF) score of 50 was assessed.[1]  (TR. 179).

---

[1] A GAF score between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g.,

Thomas E. Fink, Ph.D., completed a Psychiatric Review Technique Form on February 7, 2005 and concluded that there was insufficient evidence to evaluate the plaintiff's mental impairment.  (TR. 118-31).

## V.    DISCUSSION.

### A.  Whether the ALJ erred in failing to incorporate the plaintiff's nonexertional impairments and mental impairments when using the Grids and ignoring the testimony of the vocational expert.

The plaintiff argues that the ALJ failed to pose an adequate hypothetical question to the vocational expert, failed to fulfill his duty to develop the record and erred in applying the Grids.  (Doc. 9 at 10-13).

Regarding the ALJ's hypothetical question, the defendant argues that because the plaintiff's representative failed to question the vocational expert at the hearing, she cannot now allege error.  Further, the defendant states that the ALJ did not rely on the vocational expert's testimony in making his determination, thus the plaintiff's argument is meritless.  (Doc. 10 at 15).

A hypothetical question must include all of a claimant's impairments which are supported by the record; one which omits limitations is defective and the answer thereto cannot constitute substantial evidence to support denial of a claim.  *Ramirez v. Barnhart*, 372 F.3d 546, 553-55 (3d Cir. 2004); *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987); *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984).  However, "[w]e do not require an ALJ to submit to the vocational expert every impairment *alleged* by a claimant." *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005) (emphasis in original).

---

no friends, unable to keep a job)." *Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision*, 34, Washington, DC, American Psychiatric Association, 2000.  ("DSM-IV-TR").

In the instant matter, the ALJ's hypothetical question included all of the limitations as testified to by the plaintiff. (TR. 207-08). As stated, the ALJ asked the vocational expert to consider an individual with the plaintiff's same age, education and vocational background with the ability to stand for fifteen minutes, sit for thirty minutes, with a sit/stand option, who is unable to work an eight-hour day due to pain and difficulty moving, with the ability to lift no more than ten pounds, with marked difficulties in understanding and memory and marked difficulties in concentration and persistence. (TR. 206). The VE responded that such an individual would not be able to perform any work in the regional or national economy. (TR. 206-07). Contrary to the plaintiff's argument, the ALJ accounted for the plaintiff's nonexertional impairments in formulating his hypothetical question. (TR. 206). Moreover, on her September 2004 disability questionnaire, the plaintiff indicated that she does not need any special help or reminders to take care of her personal needs. (TR. 76). The plaintiff is also able to complete projects and activities, she is able to plan each day, she does not have trouble understanding and carrying out instructions and she can make decisions on her own. (TR. 77-78).

On the questionnaire, the plaintiff also indicated that she is able to cook, clean and do laundry with help, she can generally take care of her personal needs, and she can change and make a bed. (TR. 73-76). The plaintiff has some difficulty dressing when the weather is cold or rainy, she does not drive very often, she does not mow the lawn or do any gardening and she does not take out the trash. (TR. 74). The plaintiff does her own grocery shopping, with rest, she is sometimes able to load and unload the bags and she can carry two bags at a time. (TR. 74).

Regarding the ALJ's duty to develop the record, the court in *Jozefick v. Shalala*, 854 F. Supp. 342 (M.D. Pa. April 20, 1994), states that a hearing may be characterized as unfair where the ALJ has failed to discharge his obligation

to develop a complete record. "The question is not 'whether every question was asked which might have been asked had [the claimant] been represented by an attorney, [but] whether the record reveals evidentiary gaps which result in unfairness or clear prejudice.'" *Jozefick*, 854 F. Supp at 348 (quoting *Edwards v. Sullivan*, 937 F.2d 580, 585-86 (11th Cir. 1991)).

A review of the record does not reveal any evidentiary gaps which result in prejudice to the plaintiff. The plaintiff testified regarding her work history, education, home and daily activities and pain and limitations. (TR. 193-99). The plaintiff testified that she does not have any problems dealing with the general public, co-workers or family. TR. 193). The plaintiff is able to do housework, chores, cook, clean and watch television. (TR. 193).

The ALJ further developed the record by eliciting testimony from a vocational expert. (TR. 206-07). However, the plaintiff's representative did not question the vocational expert. (TR. 206-07). We note that, when a claimant proceeds to an ALJ hearing without the assistance of counsel, "the ALJ has an obligation, 'scrupulously and conscientiously [to] probe into, inquire of, and explore all relevant facts.'" *Jozefick*, 854 F. Supp at 348 (quoting *Smith v. Secretary of Health, Education and Welfare*, 587 F.2d 857, 860 (7th Cir. 1978)). Here, the ALJ did just that. Additionally, the ALJ left the record open at the conclusion of the hearing in order to obtain updated medical records before he rendered a decision. (TR. 183). There is substantial evidence that the ALJ fulfilled his duty to develop the record and the facts.

The defendant states that the ALJ appropriately determined that the plaintiff was not disabled and that Grid Rule 202.17 directed a finding of not disabled. (Doc. 10 at 15-16).

In determining whether a claimant can perform other work, the ALJ may rely upon the Medical-Vocational Guidelines ("Grids"), 20 C.F.R. Pt. 404, Subpt. P, App. 2, Grids. *See Jesurum v. Sec. of HHS*, 48 F.3d 114, 117 (3d

Cir. 1995). The Grids require the ALJ to consider the claimant's age, educational level, previous work experience and RFC. If a claimant has substantial nonexertional limitations, then the Grids can only be used as a framework, and a vocational expert is needed. *See Knight v. Barnhart*, 195 F. Supp.2d 569, 579 (D. Del. 2002). When the restrictions affect the claimant's ability to meet job demands other than strength demands, the limitations are nonexertional. Examples of such nonexertional limitations are difficulty functioning because of nervousness, anxiety, depression, difficulty seeing, hearing, maintaining concentration and remembering. *See* 20 C.F.R. § 404.1569a(c). In this case, the plaintiff alleges both exertional and nonexertional limitations.

The ALJ determined that the plaintiff's nonexertional impairments of depression and anxiety were non-severe and did not cause more than minimal limitations on the plaintiff's ability to perform work-related activities. (TR. 18). Because the ALJ found that the plaintiff's nonexeretional impairments were non-severe, Grid Rule 202.17 directs a finding of not disabled. (TR. 18, 21). Grid Rule 202.17 provides that a younger individual, with a limited or less education, with unskilled or no previous work experience, is not disabled. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table No. 2, Rule 202.17. The ALJ further noted that Rule 202.00(a) states that there are approximately 1,600 sedentary and light unskilled jobs available for an individual with the RFC for light duty work, such as the plaintiff. (TR. 21). *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.00(a). The ALJ noted that the record contains no objective evidence of any psychological treatment from a mental health provider. (TR. 19). The plaintiff submitted evidence from a mental health provider to the Appeals Council, consisting of an initial mental health evaluation at Northern Tier Counseling in November 2006. (TR. 176-79).

As noted, an ALJ may only use the Grids without taking testimony from a VE when there are no nonexertional limitations. *See Sykes v. Apfel*, 228 F.3d 259, 270 (3d Cir. 2000). Despite the ALJ's finding that the plaintiff's nonexertional impairments were non-severe, the ALJ elicited testimony from a vocational expert. (TR. 18, 206-07).

There is substantial evidence supporting the ALJ's finding that the plaintiff was not disabled and that the ALJ properly used the Grid Rules.

### B. Whether the ALJ erred in failing to accord significant weight to the opinions of Dr. White and Dr. Lavin.

The plaintiff argues that the ALJ erred by not according controlling weight to the opinion of treating physician, Dr. White, that she was permanently disabled. (Doc. 9 at 13-15) (TR. 148). The plaintiff also argues that the ALJ erred by not considering Dr. Lavin's assessment that the plaintiff had a GAF score of 50. (Doc. 9 at 14-15) (TR. 176-79).

The ALJ issued his decision on September 19, 2006. (TR. 13-21). The plaintiff treated with Dr. Lavin on November 20, 2006. (TR. 176-79). The plaintiff cannot argue that the ALJ erred by not considering Dr. Lavin's assessment of a GAF score of 50 when the ALJ did not have Dr. Lavin's report available to him. As stated, the plaintiff was evaluated at Northern Tier Counseling in November 2006 and was diagnosed with anxiety disorder, NOS, depressive disorder, NOS, post-traumatic stress disorder and a GAF score of 50. (TR. 176-79). At the August 3, 2006 hearing, the ALJ left the record open for one month to permit the plaintiff time to submit additional evidence. (TR. 183). The plaintiff did not submit Dr. Lavin's report until her case reached the Appeals Council level. (TR. 7). The evidence supports a finding that the ALJ did not err because he did not have Dr. Lavin's report available to him when rendering his decision.

11

Regarding Dr. White's opinion, the defendant argues that her opinion is not entitled to any special weight, it is not well-supported by the objective medical evidence, and it is inconsistent with her own treatment notes.  (Doc. 10 at 12-14).  The defendant also states that the plaintiff has good control of her conditions, the objective evidence does not support the severity of her pain and discomfort and she did not follow-up with any other physical or mental specialists.  (Doc. 10 at 10-11).

An ALJ must accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Plummer*, 186 F.3d at 429 (quoting *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)); *see also Adorno v. Shalala*, 40 F.3d 43, 47 (3d Cir.1994); *Jones v. Sullivan*, 954 F.2d 125, 128 (3d Cir. 1991); *Allen v. Bowen*, 881 F.2d 37, 40-41 (3d Cir.1989); *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir.1988); *Brewster v. Heckler*, 786 F.2d 581, 585 (3d Cir. 1986).  Where, as here, the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason."  *Plummer*, 186 F.3d at 429 (citing *Mason*, 994 F.2d at 1066).  The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled.  *See Adorno*, 40 F.3d at 48.  In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation or lay opinion.  *Plummer*, 186 F.3d at 429; *Frankenfield*, 861 F.2d at 408; *Kent v. Schweiker*, 710 F.2d 110, 115 (3d Cir. 1983).

The evidence reveals that Dr. White's treatment notes do not support a

12

finding of disabled. (TR. 97-108). As noted, the plaintiff began treating with Dr. White in April 2000. (TR. 107-08). The plaintiff was "an established patient" and treated with Dr. White approximately twice a year. At the plaintiff's first visit with Dr. White on April 5, 2000, the plaintiff did not report any back problems. (TR. 107-08). On October 31, 2000, Dr. White noted that the plaintiff had no musculoskeletal, constitutional or endocrinologic complaints, except chronic low back pain with occasional numbness and tingling down her legs. (TR. 106).

The plaintiff did not report back pain again to Dr. White until October 19, 2001. (TR. 103). Dr. White noted that the plaintiff had a history of chronic low back pain. (TR. 103). A physical examination was generally normal. (TR. 103).

In August 2002, the plaintiff complained of back pain to Dr. White and Dr. Prasad. (TR. 100-01). A physical examination revealed some levoscoliosis in the thoracic spine and a referral to a rheumatologist was considered. (TR. 100-01).

The plaintiff again treated with Dr. White in March, August and November 2003 and she reported no back pain. (TR. 97-99). At the November 2003 visit, Dr. White noted that the plaintiff had been doing well and had no complaints about her medications or medical problems. (TR. 97).

Dr. White completed a state welfare form on May 12, 2003 finding that the plaintiff was permanently disabled. (TR. 148). Dr. White diagnosed chronic low back pain and based her assessment upon physical examination, review of the medical records, the clinical history and appropriate tests and diagnostic procedures. (TR. 148).

An MRI of the plaintiff's lumbar spine on July 19, 2006 revealed only mild abnormalities. (TR. 154). Additionally, the MRI revealed no evidence of disc herniation or significant central canal stenosis of the lumbar spine. (TR.154).

13

The ALJ stated that Dr. White's opinion that the plaintiff was permanently disabled is a conclusory statement and not supported by the objective medical evidence of record. (TR. 19). The ALJ therefore rejected Dr. White's opinion that the plaintiff was permanently disabled. (TR. 19). The court in *Ford v. Barnhart*, 57 Fed. App'x 984 (3d Cir. 2003), stated that "[w]hile the ALJ is to give a treating physician's opinion controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record,' an ALJ may reject the opinion of a treating physician if it is 'conclusory and unsupported by the medical evidence.'" *Ford*, 57 Fed. App'x at 987 (quoting *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991)). The evidence supports the ALJ's finding that Dr. White's finding of disability is not supported by the objective medical evidence and is not entitled to controlling weight. *See* 20 C.F.R. § 416.927(e)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.").

There is substantial evidence supporting the ALJ's decision that the plaintiff was not disabled at any time since the filing of her application.

## VI.   CONCLUSION.

Based upon the foregoing, **IT IS RECOMMENDED THAT**:

the plaintiff's appeal from the decision of the Commissioner of Social Security denying her claim for SSI benefits, (Doc. 1), be **DENIED**.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States Magistrate Judge**

**Date**: March 21, 2008

O:\shared\REPORTS\2007 Reports\07-1235.01.hhs.wpd